UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:18-cv-00193-MOC-WCM

| | | |
|---|---|---|
| **CYNTHIA FISHER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **FRONTLINE NATIONAL**, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on defendant's Motion to Dismiss. After this Court entered a Roseboro Order advising her of her right to respond, Order (#7), plaintiff filed a Response, to which defendant has filed a Reply, making the ripe for consideration.

**FINDINGS AND CONCLUSIONS**

**I.     Background**

In this removed action, plaintiff contends that she was discriminated against in violation of the Americans with Disabilities Act when defendant refused to further consider her for employment as a pharmacist once it was discovered that she had entered into a consent order[1] with the North Carolina Board of Pharmacy. She does not, however, contend that she is being

---

1       In relevant part, the 2012 consent order detailed the errors committed by plaintiff which lead to the diversion of controlled substances by her mother, who she employed as a pharmacy technician. The order also detailed the disciplinary actions taken against plaintiff, which included a suspension. See *Whittington v. N. Carolina Dep't of Juvenile & Delinquency Prevention*, No. CIV. 1:05CV348, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006) (citations and quotations omitted) (noting that a court may take judicial notice of public records and may consider authentic documents referenced or relied upon in the complaint at the 12(b)(6) stage). The Court has considered such document insofar as it has been referenced in the Complaint and to provide context to its consideration of the Rule 12(b)(6) motion.

discriminated against based on any disability she has or is to perceived to have; rather, she contends that such is "associational discrimination."

The gist of her Complaint and argument is that her mother took narcotic controlled substances from the pharmacy plaintiff owned and that her mother was convicted of that offense. However, because he mother suffered from a disability that caused her to steal the drugs, her mother suffered from a disability. Thus, plaintiff contends and argues that defendant's decision not to further consider her application for employment as at committed by her mother against plaintiff's own pharmacy, to wit, the theft of narcotic controlled substances. She alleges, however, that such criminal acts were occasioned by her mother's disabilities and that defendant's subsequent decision to not consider her for employment as a pharmacist at a United States Army base violated the Americans with Disabilities Act due to associational discrimination. Plaintiff has also asserted pendent state law claims for defamation, negligent and intentional infliction of emotional distress, and tortious interference with prospective advantage (or prospective economic relations).

**II.     Applicable Standard**

In determining whether a claim can survive a motion under Rule 12(b)(6), the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) that the "no set of facts" standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id. at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed]

facts' to support recovery." Id. at 561 (alteration in original).  Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557.  Instead, a claimant must plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id. at 570 (emphasis added).

Post-Twombly, the Court revisited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added).  What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...." Id.  While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted

inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. If her explanation is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Finally, pro se litigant's complaint must be liberally construed. Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 72 (4th Cir. 2016) (citing Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015)). "Nevertheless, the requirement of liberal construction does not mean that th[e] court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." Burns v. Dalton, 2017 WL 3491852, at *1 (D.S.C. July 28, 2017), *report and recommendation adopted*, 2017 WL 3493130 (D.S.C. Aug. 14, 2017) (citing Weller v.

Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990)). In reviewing a pro se complaint, "[a] court may not rewrite pleadings to include claims that were never presented, construct the plaintiff's legal arguments for her, or 'conjure up questions never squarely presented.'" Jacobs v. IRS, No. CIV.A. 4:06-599, 2007 WL 895782, at *2 (D.S.C. Mar. 21, 2007), aff'd sub nom. Jacobs v. I.R.S., 234 F. App'x 171 (4th Cir. 2007) (internal citations and quotations omitted). Likewise, the Court is "not obliged to ferret through a complaint, searching for viable claims." Chitty v. Liberty Univ., 2013 WL 3877664, at *1, n.3 (W.D. Va. July 25, 2013) *aff'd*, 547 F. App'x 299 (4th Cir. 2013) (citing Holsey v. Collins, 90 F.R.D. 122 (D. Md. 1981)).

### III. Discussion

#### A. ADA Claim

While the ADA does provide protection for those discriminated against based on their association with a person who is disabled or is perceived to be disabled, it does not provide protection for association with persons who simply have criminal records. In her Complaint and Response, plaintiff explains that her mother's crimes while employed at her pharmacy *may* have been the result of her mother suffering several strokes, which plaintiff *believes* affected her "both mentally and physically." Complaint at 5. Plaintiff does not, however, allege that her mother was disabled or, most importantly, that defendant either knew or perceived her mother as disabled.

Even when the Court construes the plaintiff's allegations liberally under Kerr, the Complaint remains devoid of any plausible contention that defendant either knew or perceived that plaintiff's mother suffered from a disability. Instead, the Complaint makes it clear that defendant decided to not further consider her for employment after it discovered the NCBOP consent order. That order, in turn, makes no mention of any ailments, conditions, or disabilities her mother may

have suffered, only criminal misconduct which was aided by plaintiff's failure to implement controls and other mismanagement. There is absolutely no contention that defendant knew, had reason to know, or even perceived that plaintiff's mother was disabled. Indeed, not even an inference of such knowledge by defendant can be discerned because the only indicia of disability is found in plaintiff's own speculation that it may have been mental or physical illness which led to her mother's criminal conduct. There simply is no allegation that she shared such speculation with the defendant prior to defendant deciding to no longer consider plaintiff as a candidate. Thus, plaintiff's claim of discrimination is not supported by any plausible facts and must be dismissed.

### B. State Law Claims

In addition to her federal ADA claim, plaintiff has alleged a number of supplemental state law claims. As to each state-law cause of action, plaintiff fails to plead sufficient facts to make any supplemental claim that is "plausible on its face," but again relies on her own conclusions or assumptions that she was not hired for discriminatory reasons. Khalik v. United Air Line, 671 F.3d 1188, 1193 (10th Cir. 2012). Conclusions unsupported by plausible allegations of fact are insufficient to withstand a motion to dismiss. Iqbal, supra. The Court will review each claim.

#### 1. Defamation

In support of her defamation claim, plaintiff alleges: "I believe Frontline National is guilty of defamation in the form of slander per se because Frontline National stated I had a record or a criminal conviction involving chemical substances which is not true" and further stated "I had a pending issue with the Board of Pharmacy and I do not." Complaint at pg. 6). Plaintiff goes on to allege, "Frontline National sent me an email stating that they are no longer

considering me for a government contract for these reasons." Id. What is patently missing from her pleading is any allegation that the allegedly defamatory statements were communicated to anyone other than plaintiff. Without publication to a third party, there is no defamation.

There are two separate torts encompassed by the term "defamation," those being libel and slander.

> Generally, "libel is written while slander is oral." "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel."

Gaunt v. Pittaway, 135 N.C. App. 442, 447 (1999)(citations omitted). In this case, plaintiff contends that she has been harmed by slander. The elements of slander are that a statement (1) was made to a third person and (2) that such statement was false. Andrews v. Elliot, 426 S.E.2d 430, 432 (N.C. Ct. App. 1993). Further, plaintiff alleges that defendant's alleged statements amounted to slander *per se*. A slander *per se* occurs

> when considered alone without explanatory circumstances [the statement] (1) charges that a person has committed an infamous crime... (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Gaunt, supra, at 448 (citation omitted). As to a claim for libel *per se*, the North Carolina Court of Appeals defines such a claim as follows:

> a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Clark v. Brown, 99 N.C. App. 255, 277, *disc. review denied*, 327 N.C. 426 (1990).

Because plaintiff bases her defamation claim on a statement made directly to her and no one else, plaintiff fails to allege facts that could support a finding of publication, and this claim

will be dismissed.

## 2. Negligent Infliction of Emotional Distress

The allegations plaintiff asserted in support of her defamation claim also appear to form the basis of her claim for negligent infliction of emotional distress. The essential elements of a claim for negligent infliction of emotional distress include the following:

1. the defendant negligently engaged in conduct;
2. it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress or mental anguish; and
3. the conduct did in fact cause the plaintiff severe emotional distress.

Pardasani v. Rack Room Shoes. Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996).

Plaintiff alleges that "Frontline National accused me of being a drug addict and having a criminal conviction because of the legal issues of my mother. Frontline National should have been aware of how saying they can't hire me because of a criminal record or conviction would affect me." Complaint at pg. 8. This manner of pleading negligent infliction has long been held to be insufficient:

> The district court likewise dismissed Mitchell's negligent infliction of emotional distress claim after holding that this tort requires a showing of outrageous conduct. We decline to review that holding because we believe the negligent infliction claim should have been dismissed for a more basic reason: Mitchell's complaint does not allege any negligent acts by Lydall. *See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C.1990) ("to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, . . ."). Mitchell's complaint contains merely a single, conclusory allegation that Lydall was negligent; the material factual allegations charge nothing but intentional acts by Lydall in failing to accommodate Mitchell's MS condition and in discharging him. Taking these material factual allegations as true and construing them in the light most favorable to Mitchell . . . we must conclude that they do not state a claim for negligent infliction of emotional distress.

Mitchell v. Lydall, Inc., 16 F.3d 410 , No. 93-1374, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994) (unpublished opinion). A claim for *negligent* infliction of emotional distress is, therefore, subject to dismissal when "the material factual allegations charge nothing but intentional acts...." Id. As courts relying on Mitchell have since held, "[w]hen the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, it is insufficient to state a claim for negligent infliction of emotional distress." Barbier v. Durham County Bd. of Educ., 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (citing Mitchell, supra).

Inasmuch as plaintiff relies solely on intentional acts, plaintiff's claim for Negligent Infliction of Emotional Distress will be dismissed.

### 3. Intentional Infliction of Emotional Distress

Next, plaintiff claims that defendant intentionally inflicted emotional distress ("IIED") on her when it decided not to further consider her for employment. Plaintiff bases this claim on her allegation that defendant accused her of being a drug addict and having a criminal conviction.

The elements of IIED are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 488, disc. rev. denied, 317 N.C. 334 (1986). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." Id. at 490. For purposes of ruling on defendant's motion, the Court has taken all the allegations of the Complaint as true. Even if the court were to consider all allegations as true, they do not "exceed all bounds of decency," West v. King's Dep't Store, Inc., 365 S.E.2d 621, 625 (N.C. 1988), and cannot be "'regarded as atrocious,

and utterly intolerable in a civilized community.'" Wagoner v. Elkin City School Bd. of Educ., 440 S.E.2d 119, 123 (N.C. Ct. App. 1994) (citation omitted).

The initial inquiry made by North Carolina courts is whether the alleged conduct is "extreme and outrageous." This is a question of law for the court. Johnson v. Bollinger, 86 N.C. App. 1, 6 (1987). Under controlling North Carolina law,

> [l]iability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Briggs v. Rosenthal, 73 N.C. App. 672, 327 S.E.2d 308 (1985) (*quoting* The Restatement of Torts). Where a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the IIED claim is subject to dismissal pursuant to Rule 12(b)(6). Johnson, supra, at 6.

In a previous action against another potential pharmacy employer, plaintiff made nearly the same allegation ("thief and a drug addict"), which this Court determined could not support an IIED claim. This Court determined that such allegation, taken as true, was not extreme and outrageous as a matter of law. Fisher v. Walgreen, Co., No. 1:17-cv-00225-MOC-DLH, Doc. 11, pgs. 17-18, *report and recommendation adopted*, Doc. 16, pgs. 11-12 (explaining, "in support of her claim of intentional infliction of emotional distress, plaintiff alleges[] that … defendant accused her of being a thief and a drug addict [and] that defendant mentioned a crime that her mother committed in spite her," among other things, and finding, "Even taken together and accepting plaintiff's version of events as entirely true, the court cannot find that … allegations

plausibly allege 'extreme and outrageous' conduct, which is narrower than one might think under North Carolina law.").

Here, the allegation is that defendant has accused her of being a criminal and a drug addict. This allegation is little different than the one plaintiff employed in her prior litigation before the undersigned, and those alleged statements simply cannot be the basis for a finding of extreme and outrageous conduct. Plaintiff's claim for IIED will be dismissed.

### 4. Tortious Interference with Prospective Economic Advantage

Plaintiff's final supplemental claim is that defendant tortuously interfered with her prospective economic advantage when it decided not to hire her. To allege a claim for wrongful interference with prospective advantage, a plaintiff must allege plausible facts which, if later proved, could show that the defendant acted without justification in "inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." Walker v. Sloan, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (quoting Cameron v. New Hanover Mem'l Hosp., 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982)). Put another way, the essential elements of a claim for tortious interference with prospective advantage are

> (1) a valid contract would have existed between plaintiff and a third party but for defendant's conduct;
>
> (2) defendant maliciously induced the third party to not enter into the contract; and
>
> (3) defendant thereby proximately caused plaintiff to suffer actual damages.

SAS Inst. Inc. v. World Programming Ltd., 64 F. Supp. 3d 755, 780 (E.D.N.C. 2014) (Citation

omitted). See also Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 462 (2000) (citing Childress v. Abeles, 240 N.C. 667, 674 (1954)); Beck v. City of Durham, 154 N.C. App. 221, 232 (2002).

Plaintiff Complaint lacks plausible allegations of fact that could support a finding in her favor as to any of these elements. Plaintiff's Complaint does not allege facts that could support a finding that a valid contract would have existed between herself and the United States Army but for defendant's conduct, or that defendant maliciously induced the Army not to enter into a contract with plaintiff, or that defendant caused her to suffer actual damages. In her Response, plaintiff argues that her claim is based on defendant stating she had a "criminal record or conviction." Response at pg. 3. Taking that argument into consideration, she only alleges that such statement was made to her by defendant and not made to the United States Army. Because plaintiff has made no allegations that could support a conclusion that defendant interfered in a potential contract with a third party, plaintiff's claim for tortious interference will be dismissed.

### C. New Claims

Plaintiff has, without leave of Court as required by Rule 15, Fed.R.Civ.P., or filing a motion separate and apart from her Response as required by Rule 7.1, LCvR, attempted to assert additional claims in her Response. First, plaintiff cannot raise new claims in a Response to a Motion to Dismiss. Booker v. Washington Mut. Bank, FA, 375 F. Supp. 2d 439, 441–42 (M.D.N.C. 2005).

Second, even considering such additions as an implicit Motion to Amend, amendment will be denied due to futility. First, plaintiff attempts to recast her ADA claim as another supplemental claim, this time for violation of an unspecified public policy of North Carolina. The Court has

assumed that the unnamed public policy is disability discrimination. As this Court has recognized, "while the NCEEPA clearly provides protection against disability discrimination for employees with a disability, it does not do so for family members with disabilities." Dunkin v. Marshall Air Sys., Inc., No. 3:14-CV-110-FDW-DSC, 2014 WL 4407043, at *2 (W.D.N.C. Sept. 8, 2014) (citing N.C. Gen. Stat. § 143–422.2). Even if North Carolina recognized a cause of action similar to protections afforded under the ADA, plaintiff's claim would fail for precisely the same reasons it fails under the ADA. Put another way, North Carolina law, while clearly providing protections for the disabled, would not recognize a cause of action against a potential employer that is not alleged to have any knowledge of the employee's or employee's family member's disability or perceived (by plaintiff only) disability. Thus, it would be futile under even the broadest consideration of North Carolina law to allow plaintiff to amend her Complaint to allege this cause of action. The implicit Motion to Amend is denied due to futility of amendment.

Third, plaintiff also attempts to allege a claim for "blackballing," which this Court will also consider as an implicit Motion to Amend. Assuming plaintiff is attempting to bring an action for *blacklisting* rather than "blackballing," North Carolina prohibition on blacklisting is statutory and provides, as follows:

> If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a Class 3 misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00); and such person, agent, company or corporation shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person or agent of any company or corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge.

N.C. Gen. Stat. § 14-355. As plaintiff has not alleged and cannot allege that defendant ever employed her, this statute has no application to plaintiff. Further, plaintiff has made no plausible allegation that defendant has in any manner interfered with her attempts to find a job with other employers. Inasmuch as plaintiff cannot and has not ascribed to this defendant any blacklisting, blackballing, or any other interference with subsequent applications for employment, her implicit Motion to Amend to add a claim for blackballing or blacklisting is denied based on futility of amendment.

### D. Dismissal with Prejudice

Finally, defendant has requested that such dismissal be without prejudice. Plaintiff has not addressed this issue. As discussed above, plaintiff's claims and proposed amendments are fatally defective and cannot be cured by further amendment, making dismissal with prejudice appropriate. Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 624 (4th Cir. 2015).

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's implicit Motions to Amend contained in her Response are **DENIED**, defendant's Motion to Dismiss (#5) is **GRANTED**, and this action is **DISMISSED** in its entirety with prejudice.

Signed: March 5, 2019



Max O. Cogburn Jr
United States District Judge